In the Matter of STANLEY L. SIEGEL (Admitted as STANLEY LEONARD SIEGEL), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, July 10, 1986

## APPEARANCES OF COUNSEL

*Howard Benjamin* of counsel *(Michael A. Gentile,* attorney), for petitioner.

*Peter L. Zimroth* of counsel *(Kostelanetz & Ritholz,* attorneys), for respondent.

## OPINION OF THE COURT

Per Curiam.

Petitioner Departmental Disciplinary Committee moves for an order confirming the Hearing Panel's report and supplemental report recommending that the final discipline to be imposed upon respondent is a suspension, effective September 18, 1984, to be terminated forthwith and that respondent be reinstated to the practice of law.

Respondent was admitted to practice as an attorney and counselor-at-law in the State of New York by this court in December of 1954. On March 13, 1984, he was convicted in the United States District Court for the Southern District of New York of the crime of unlawfully, knowingly and willfully aiding and abetting his client in willfully failing to appear as directed before the United States District Court of New York, a violation of 18 USC § 3150 (2) and § 2. The crime in question is a Federal misdemeanor. Respondent served three months in jail and was sentenced to serve 250 hours of community service, which he duly performed upon his release from incarceration. He was also fined $1,000.

On June 18, 1984, petitioner presented a "serious crime" petition pursuant to Judiciary Law § 90 (4) (d) seeking an order suspending respondent from the practice of law and directing him to show cause why a final order of censure, suspension or removal from office should not occur. Respondent was thereafter suspended by this court, by order entered on September 18, 1984, pending a final determination of the petition. (104 AD2d 545.) The matter was then referred to the Departmental Disciplinary Committee to hear, report and recommend a final sanction. Hearings were accordingly conducted before a Panel of the Disciplinary Committee, at the conclusion of which a report was issued recommending that respondent be suspended for a period of one year.

In the view of the Panel, a one-year suspension was adequate to protect the public interest and to reflect the seriousness of respondent's misconduct while also taking into consid-

eration the substantial mitigating factors which he had demonstrated. In that regard, respondent, who at the time of the hearings was 55 years old, had an unblemished record prior to the offense involved herein and had not previously been disciplined. Following the completion of his 250 hours of mandatory community service, respondent continued to render such services on a voluntary basis for one day a week. In addition, he voluntarily withdrew from the practice of law upon his release from jail and even before he was formally suspended by this court.

The District Court Judge who had handled the case against respondent noted at the sentencing that respondent was a well-respected, effective member of the Bar of nearly 30 years' standing with a reputation and performance in his profession which had provided him and his family, consisting of a wife and three children, with a stable and honorable living. According to the Judge, the primary cause for respondent's illegal conduct was not ignorance or greed, but rather a psychological need to serve and be appreciated. Respondent had always made excessive efforts to please and help others. While this quality seemed to earn him love and loyalty, it was carried to such a pathological extreme that it resulted in the commission of the misdemeanor to which he pleaded guilty. Nonetheless, the court concluded that respondent had already begun to restore his self-esteem and was capable of rehabilitation.

In the instant proceeding, respondent did not deny the charges against him. Instead, he candidly admitted his misconduct and submitted substantial evidence in explanation and mitigation of his actions, testifying in detail concerning his background, the nature of his legal practice and the circumstances surrounding his relationship with his client, Ralph Rogers. He first met Rogers in or about 1968 when the latter was in his late teens. Rogers had "dropped out" from society and had succumbed to the drug culture. He was unemployed and apparently preferred it that way. Yet, respondent developed a great sympathy for Rogers' plight, as he did for other such clients, and a friendship arose between the two of them. In 1971, Rogers was arrested on a conspiracy charge involving a small amount of LSD. He was indicted and subsequently jumped bail. Although respondent tried to convince him to surrender, Rogers became a fugitive and disappeared from sight. However, some three years later, he contacted respondent. Despite the fact that respondent was aware

that Rogers was a fugitive from justice, he neither reported him to the authorities nor counseled him to surrender. Instead, for a period of several years thereafter, respondent repeatedly gave Rogers legal and personal advice and references and even performed certain legal services for him. The United States Attorney began an investigation of the matter in November of 1981. During the course of this investigation, respondent lied to the United States Attorney about his dealings with Rogers. He was subsequently charged with improperly aiding and assisting Rogers in remaining a fugitive.

Respondent further informed the Hearing Panel that from the inception of the United States Attorney's investigation, he was in a deep depression, sleeping 20 hours a day, not working or talking to anyone and generally evading reality. His law practice and his personal life disintegrated. He lied to the United States Attorney "because I thought it would get me out of the mess and stop the tremendous depression and tremendous turmoil in my life. After 50 some odd years, I am confronted with my world coming apart * * * I wanted to save my world and my kids so I lied. That is why I lied. I was hoping that it would stop the whole thing so I could start living a life again." Respondent, who expressed sincere and deep contrition for his behavior, asserted that he would never again repeat his misdeeds.

In September of 1984, respondent sought help from a qualified psychiatrist, Dr. Eleanor Townsend, and has continued under her care to the present date. Dr. Townsend testified at the hearing that his misconduct was due to mental incapacitation. She described respondent as suffering from a mood disorder known as manic depression, which subjects him to extreme mood swings, from peaks of elation and optimism where he would be motivated to help people and do whatever they requested of him, to depths of depression, low self-esteem and feelings of worthlessness. Consequently, in late November of 1984, she started to treat him chemically with lithium. According to Dr. Townsend, respondent has responded remarkably well to the lithium, and she has not observed any kind of manic behavior since these treatments were undertaken. In her opinion, so long as respondent remains on the medication, he should experience no further manic difficulties. However, since respondent does persist in suffering from depression, in April of 1985, Dr. Townsend prescribed an

antidepressant for him, which, she asserts, has resulted in a substantial improvement in his mental health.

The Hearing Panel accorded great weight to the testimony of Dr. Townsend and was also extremely impressed with the caliber of respondent's character witnesses, including four New York State Supreme Court Justices. All of these witnesses unequivocally referred to respondent's trustworthiness, competence, decency and ethical responsibility. In the opinion of the Hearing Panel, when "as here, adversaries at the bar and members of the bench speak with one voice regarding a lawyer's character and reputation, their testimonials become particularly persuasive and worthy of the most careful consideration." Thus, the Panel concluded that respondent's misconduct had been isolated and aberrational.

Following the issuance of the Hearing Panel's report, the Departmental Disciplinary Committee moved to confirm the report and suspend respondent for one year, effective September 18, 1984. However, since the proposed one-year suspension period had already expired, the matter was remanded for the purpose of determining if respondent had sufficiently overcome his medical problems so as to be capable of representing clients and returning to the practice of law. *(See, Matter of Linn,* 109 AD2d 124.) Pursuant to this court's order of January 23, 1986, hearings were held before a panel on March 25th and April 1st. Respondent called character witnesses, submitted character letters and recalled Dr. Eleanor Townsend to testify regarding his present mental condition. Respondent himself also testified.

Thereafter, the Hearing Panel filed a supplemental report in which it found that:

"Respondent no longer portrays the symptoms of a manic-depressive. His moods have leveled out. His attention span is now normal. He can concentrate for prolonged periods. He accepts the concept of personal responsibility; he now confronts his problems, rather than evading them; and he now analyzes and evaluates his options instead of reacting to them rashly and without consideration.

"Perhaps the most persuasive witness at the current hearing was respondent himself. That there has been substantial improvement, both physically and emotionally, in respondent during the last year became immediately obvious during his testimony. Where he had previously been described as looking like an 'unmade bed'—an understated accuracy—he is now

acceptably tidy in both dress and mental approach. His demeanor and manner of presentation was moderate and stable. He appeared confident and at ease with himself. He spoke and acted as a professional. He responded to questions carefully and analytically. He showed no evidence of mental instability, and, of great importance, he displayed an acceptance of his illness, an awareness that he will need therapy and medical aid for the rest of his life, and a determination to avoid any resurgence of that illness. He plainly recognizes that his treatment under Dr. Townsend's guidance has proven to be extraordinarily rewarding and he has persuaded the Panel that he will remain under her continuous care in the future."

The Panel's determination that respondent is now fit to resume the practice of law is amply supported by the record. Since he has demonstrated to the satisfaction of the Hearing Panel and to this court that he is no longer suffering from the medical condition which precipitated his misconduct, the petition of the Departmental Disciplinary Committee should be granted.

Consequently, the motion to confirm the report and supplemental report of the Hearing Panel is granted and a final discipline is imposed upon respondent of a period of suspension, effective September 18, 1984, which is terminated forthwith, and respondent is reinstated to the practice of law, effective immediately.

SULLIVAN, J. P., ROSS, CARRO, MILONAS and ELLERIN, JJ., concur.

Motion granted and a final discipline imposed upon respondent of a period of suspension, effective September 18, 1984, which is terminated forthwith, and respondent reinstated to the practice of law effective immediately.